The Law Office of Richard St. Paul, Esq., PLLC
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
Telephone: (914) 517-7568
Facsimile: (914) 517-7569
Attorneys for Plaintiff
Jerry Harris

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------------------------x
JERRY HARRIS,

                           Plaintiff,

   -against-

NEW JERSEY SHARING NETWORK,

                        Defendant.
------------------------------------------------------------------------x

DOCKET NO.

CIVIL ACTION
COMPLAINT

Plaintiff Jerry Harris ("Plaintiff"), by his attorneys, The Law Office of Richard St. Paul, Esq., PLLC, as and for his Complaint against Defendant New Jersey Sharing Network, alleges as follows:

### INTRODUCTION

1.     This is an action to redress the unlawful discrimination, hostile work environment and retaliation committed against Plaintiff throughout his employment in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 ("Section 1981"), and the New Jersey Law Against Discrimination ("NJLAD").

2.     Defendant's conduct also is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

PARTIES

3.     Plaintiff Jerry Harris is an individual residing at 173 Riverwalk Way, Clifton, NJ 07014.  Plaintiff is an African American male.

4.     Upon information and belief, Defendant New Jersey Sharing Network ("NJSN" or "Defendant"), is a nonprofit organization, with its principal offices and place of business located at 691 Central Avenue, New Providence, NJ 07974.  Upon information and belief, NJSN conducts organ and tissue recovery for approximately 4,000 New Jersey residents.

5.     Plaintiff has complied with all statutory prerequisites to his Title VII claims, having filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and having received notice of his right to sue from the EEOC, dated December 9, 2020.  This action has been filed within 90 days of receipt of Plaintiff's EEOC right to sue letter.

JURISDICTION AND VENUE

6.     This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this case involves questions of federal law.

7.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff's state law claims share all common operative facts with their federal law claims, and the parties are identical.  Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

8.     Venue is proper in, and Defendant is subject to the personal jurisdiction of, this Court because Defendant maintains facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District.  28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9.      Plaintiff is a transplant professional with over 25 years of experience.  Prior to his employment with Defendant, Plaintiff had previously served as a director, manager, supervisor, and team leader for several organizations within the tissue banking industry.

10.      In February 2017, Plaintiff was hired by Defendant as a Recovery Specialist II.

11.      In December 2017, Plaintiff observed some inconsistencies concerning the unequitable distribution of work assignments.  Accordingly, on December 9, 2017, Plaintiff sent an email to Sharyn Sawczak, Defendant's Director of Clinical Practice and Innovation, regarding these concerns.  Ms. Sawczak did not respond to this email.

12.      One month later, in January 2018, Plaintiff sent Ms. Sawczak a follow-up email addressing his concerns about discrimination/retaliation relating to the unequitable distribution of work assignments.  Throughout the course of Plaintiff's employment, NJSN retaliated against Plaintiff for his discrimination complaints by assigning him to work on extra shifts, especially after he had previously worked a 24-hour shift and there were other team members available to work who had not previously worked a 24-hour shift.  NJSN's retaliation resulted in the lack of enforcement concerning sufficient call rotation to prevent its staff from being abused or discriminated against by other staff that were responsible for delegating workloads.  For example, if Plaintiff was scheduled to work a 24 hour shift along with other available team members, Plaintiff would get called out to work on other, additional shifts more frequently than those team members who never complained about the company and its discriminatory practices.  Here, Defendant's expectation was that Plaintiff work multiple shifts despite the availability of other team members who had not previously worked a 24-hour shift.  Defendant rejected Plaintiff's attempt to seek clarity regarding the aforementioned retaliatory and unfair process.  NJSN's HR

department stated that Plaintiff was responsible for going out on all cases whenever contacted despite his knowledge that other staff could have easily been scheduled.  This became the NJSN retaliation policy that was enforced and upheld routinely against all NJSN employees who objected to the company's discriminatory practices.

13.     Ms. Sawczak did not respond to Plaintiff's January 18 email.

14.      In 2018, Defendant advertised an open role for a position within the company, entitled Manager of Tissue Recovery and Research.  Based upon his experience and qualifications, Plaintiff sought a promotion from his current role within NJSN and applied for the position. Defendant provided that the Manager of Tissue Recovery and Research position required that the candidate have management experience (which Mr. Harris had).  Based upon his experience and the qualifications that were listed, Plaintiff was a perfect fit for this position.

15.     Shortly thereafter in 2018, Plaintiff interviewed for the position but subsequently learned that the position was awarded to Joe Caivano ("Caivano"), a white male with no management experience (which Defendant said was required) and who did not have the education and experience that was equivalent to Plaintiff's.

16.     In fact, based upon the questions Plaintiff was asked during his interview, Plaintiff believes that he was never seriously considered for the position.

17.     Approximately six months after Mr. Caivano was awarded the role of Manager of Tissue Recovery and Research, he was asked to resign from the company.

18.     Thereafter, Plaintiff once again believed he was the perfect candidate to fill the open position of Manager of Tissue Recovery and Research.  However, Defendant did not advertise the job, and instead, selected an internal candidate named Oscar Colon ("Colon").

4

19.     On July 19, 2018, Plaintiff sent an email to Defendant's Human Resources Director (Joyce Jardot) expressing his concern "regarding the recent job promotion within the clinical department.   Specifically, why wasn't the Manager of Tissue and Research opening posted internally or otherwise to allow all qualified candidates to apply for the position."

20.     On July 19, 2018, Ms. Jardot responded to Plaintiff's email by, *inter alia*, citing an excerpt from a NJSN HR policy stating that the company has discretion of whether to post an open position, and that Mr. Colon was awarded the position based on his "knowledge in multiple areas…qualifications" and "vast experience."

21.     Later that day, Plaintiff sent another email to Ms. Jardot which, *inter alia*, asked why the cited HR policy was not exercised before Mr. Caivano was chosen, reminded her that Plaintiff has previously applied for the open position before Mr. Caivano was selected and stated that Defendant's actions concerning this position appeared to be "discriminatory under the circumstance."   In this email, Plaintiff also stated that "I'd like an opportunity to speak with you in person regarding the decision and the fact that since I've been employed with [NJSN] job openings have been posted internally before they're filled."

22.     Plaintiff subsequently scheduled a meeting with Ms. Jardot to discuss Defendant's hiring practices and the communication issues that he was having with Ms. Sawczak.  Tellingly, Ms. Sawczak never acknowledged or responded to Plaintiff's concerns.

23.     In 2018, after Plaintiff complained to his supervisor (Ms. Sawczak) about discrimination/retaliation concerning the unequitable delineation of duties, Defendant further discriminated and retaliated against Plaintiff evidenced by, *inter alia*, the fact that Plaintiff was denied the opportunity to dial in remotely to a conference call, but another white team member was given the opportunity to dial in remotely to the same meeting.

24.     In 2019 and 2020 Defendant continued its practice of retaliating against Plaintiff concerning the unequitable distribution of work duties.  As detailed above, during this time, Defendant continued its unlawful retaliation against Plaintiff for his discrimination complaints by assigning him to work on extra shifts, especially after he had previously worked a 24-hour shift and there were other team members available to work who had not previously worked a 24-hour shift.

25.     On or about June 8, 2020, Defendant posted a job opening notice for the position of Donation Resource Manager ("DRM").  Once again, based upon his qualifications and experience, Plaintiff believed he was the perfect candidate to fill this position.  Accordingly, on June 15, 2020, Plaintiff applied for the DRM position by submitting his application materials to Human Resources.

26.     After Plaintiff applied for the DRM position, Defendant (once again) discriminated and retaliated against him, by placing him on a "coaching plan" based upon the false claim by Ms. Sawczak that he was not following certain protocols.  Plaintiff was placed on the so-called "coaching plan" in July 2020 for an occurrence that took place in January 2020.  Notably, Plaintiff was placed one the bogus "coaching plan" the day that he learned that the DRM position was closed and that all of NJSN's internal candidates for the position (except Plaintiff) had been interviewed and considered.  Ms. Sawczak's statement that Plaintiff was not following protocol was an unlawful pre-text for Defendant to discriminate and retaliate against Plaintiff.

27.     On July 24, 2020, Plaintiff sent an email to Ms. Jardot which, *inter alia*, stated:  (1) Plaintiff learned that the DRM position had been filled and that all internal candidates (except him) had been interviewed for the position; (2) that he was "outraged that no consideration for [his] experience, education, certifications and contributions to NJSN were taken, especially when [he]

possess[ed] direct experience within the Donor Center Tissue recovery activities expanding well over 25 years within the industry"; (3) reiterated Plaintiff's concern for the "discriminatory" actions taking place within the company; (4) highlighted his contributions to NJSN; (5) his continued "outrage[] that [he] wasn't afforded the opportunity because [he was] certain that if given a chance for promotion [he] would succeed"; and (6) the unfairness surrounding the retaliatory "coaching plan" that was put in place.

28.     Once again, Defendant retaliated against Plaintiff as he was not offered an opportunity to interview for the role of DRM and an internal candidate was selected for the position. Shortly thereafter, Defendant further retaliated against Plaintiff by forcing him to resign from his position with Defendant (effective as of August 6, 2020) or face termination based upon his complaints of discrimination in the workplace.

29.     As detailed above, despite Plaintiff's background, experience, results and proffered skill, NJSN discriminated against Plaintiff and retaliated against Plaintiff by compelling him to work a shift immediately after finishing a 24-hour shift, failing to consider his application for several positions within the company, placing him on a bogus, contrived "coaching plan" and forcing him to either resign or face termination due to the fact that he complained about the company's discriminatory practices.

30.     Based upon Defendant's conduct, upon information and belief, Defendant does not consider or provide African Americans with opportunities for advancement within the company, even when (such as Plaintiff) they have the clear background, experience, performance and qualifications to be considered for these positions.

31.     While Plaintiff was employed at NJSN, he was subject to a hostile and discriminatory environment. NJSN offers the bogus pretext that Plaintiff was not considered for

promotion within the company because he did not have the requisite experience and due to performance concerns, however, NJSN at the same time chose a white man (Mr. Caivano) to fill the Manager of Tissue Recovery and Research position with no management experience and who was not as qualified as Plaintiff and failed to interview and consider Plaintiff for the DRM position despite the fact the he had the requisite experience and was otherwise qualified for each position. In addition, there is no dispute that NJSN employed either white males or white women in management positions. Furthermore, if you were a minority, you were not afforded the same opportunities for promotion within the company as other less qualified white employees.

32.     As a result of the hostile work environment caused by Defendant, Plaintiff has suffered - and continues to suffer - from severe emotional distress.

33.     Defendant's conduct can be classified as nothing short of deliberate and unlawful discriminatory conduct constituting malicious, willful and wanton behavior in violation of Plaintiffs' legal right to work in an employment setting free of unlawful discrimination, racial discrimination and retaliation.

AND AS FOR A FIRST CAUSE OF ACTION
(Violations of Section 1981 of the Civil Rights Act of 1866 - 42 U.S.C. §1981)

34.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs of this Complaint as set forth herein.

35.     Plaintiff, who is African American, is a member of a racial minority, as provided in 42 U.S.C. §1981.

36.     Defendant has discriminated against Plaintiff on the basis of his race and/or color in violation of Section 1981 by denying him the same terms and conditions of employment available to employees who are White, including, but not limited to: (1) discriminating

8

relating to the unequitable distribution of work assignments; (2) discriminating with hiring practices and promotions; (3) awarding the Manager of Tissue and Research position to a white employee (Joe Caivano) who did not have the requisite management experience and who did not have Plaintiff's education and experience; (4) denying Plaintiff the opportunity to dial in remotely for a conference call (after Plaintiff complained to his supervisor, Ms. Sawczak about discrimination as it relates to the unequitable delineation of duties) while allowing another white team member to dial in remotely to the same meeting; (5) not giving Plaintiff the opportunity to interview for the DRM position with the company while simultaneously offering the position to white employees who were less qualified and had less experience; (6) placing Plaintiff on a bogus, contrived "coaching plan"; and (7) ultimately forcing Plaintiff to resign.

37.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of damages.

38.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which he is entitled to an award of damages.

39.     Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

40.     By reason of the foregoing, Plaintiff demands judgment on the first cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

AND AS FOR A SECOND CAUSE OF ACTION
(Retaliation in Violation of 42 U.S.C. 1981)

41.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs of this Complaint as set forth herein.

42.     Defendant has retaliated against Plaintiff in violation of Section 1981 for opposing and/or complaining of Defendant's discriminatory practices against himself and other employees by, *inter alia*, subjecting Plaintiff to acts of discrimination, harassment and humiliation, and (1) retaliating concerning the unequitable distribution of work assignments; (2) discriminating with hiring practices and promotions; (3) awarding the Manager of Tissue and Research position to a white employee (Joe Caivano) who did not have the requisite management experience and who did not have Plaintiff's education and experience; (4) denying Plaintiff the opportunity to dial in remotely for a conference call (after Plaintiff complained to his supervisor, Ms. Sawczak about discrimination as it relates to the unequitable delineation of duties) while allowing another white team member to dial in remotely to the same meeting; (5) not giving Plaintiff the opportunity to interview for the DRM position with the company while simultaneously offering the position to white employees who were less qualified and had less experience; (6) placing Plaintiff on a bogus, contrived "coaching plan"; and (7) ultimately forcing Plaintiff to resign.

43.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical

10

injury, for which he is entitled to an award of monetary damages and other relief.

44.     Defendant's unlawful and retaliatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

45.     By reason of the foregoing, Plaintiff demands judgment on the second cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

AND AS FOR A THIRD CAUSE OF ACTION
(Discrimination and Harassment in Violation of Title VII)

46.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs of this Complaint as set forth herein.

47.     Defendant has discriminated against Plaintiff on the basis of his race/color (black) in violation of Title VII by denying him the same terms and conditions of employment available to employees who are not black, including but not limited to: (1) discriminating relating to the unequitable distribution of work assignments; (2) discriminating with hiring practices and promotions; (3) awarding the Manager of Tissue and Research position to a white employee (Joe Caivano) who did not have the requisite management experience and who did not have Plaintiff's education and experience; (4) denying Plaintiff the opportunity to dial in remotely for a conference call (after Plaintiff complained to his supervisor, Ms. Sawczak about discrimination as it relates to the unequitable delineation of duties) while allowing another white team member to dial in remotely to the same meeting; (5) not giving Plaintiff the opportunity to interview for the DRM position with the company while simultaneously offering the position to white employees who were less qualified and had less experience; (6) placing Plaintiff on a bogus, contrived "coaching plan"; and (7) ultimately forcing Plaintiff to resign.

11

48.     Defendant has discriminated against Plaintiff on the basis of his race/color and/or national origin in violation of Title VII by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his race/color and/or national origin.

49.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

50.     Defendant's unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

51.     By reason of the foregoing, Plaintiff demands judgment on the third cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

AND AS FOR A FOURTH CAUSE OF ACTION
(Violation of the New Jersey Civil Rights Act)

52.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs of this Complaint as set forth herein.

53.     For the same reasons set forth in Counts One through Three of this Complaint, alleging violations of the U.S. Constitution under 42 U.S.C. § 1983, incorporated by reference here for purposes of the Fourth Claim for violations of the New Jersey Civil Rights Act, the actions and omissions of the Defendant, who were acting under the color of state law, constituted violations

of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, by depriving Plaintiff of rights secured by the Fourteenth Amendment of the United States Constitution and Article I of the New Jersey Constitution.

54.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of New Jersey Civil Rights Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of damages.

55.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of New Jersey Civil Rights Act, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which he is entitled to an award of damages.

56.     By reason of the foregoing, Plaintiff demands judgment on the fourth cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

<u>AND AS FOR A FIFTH CAUSE OF ACTION</u>
(Violation of the New Jersey Law Against Discrimination)

57.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs of this Complaint as set forth herein.

58.     The New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq*., makes it unlawful for any employer to, among other things, directly or indirectly to discriminate against any person and/or provide differential treatment on the basis of, *inter alia*, race, creed or color. *See* N.J.S.A. § 10:5-12.

59.     The NJLAD, N.J.S.A. § 10:5-1 *et seq*., makes it unlawful "For any person to take

reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act." *See* N.J.S.A. § 10:5-12.

60.     Defendant has discriminated and retaliated against Plaintiff in violation of the NJLAD for opposing and/or complaining of Defendant's discriminatory practices against himself and other employees by, *inter alia*, subjecting Plaintiff to acts of discrimination, harassment and humiliation, and (1) discriminating and retaliating relating to the unequitable distribution of work assignments; (2) discriminating with hiring practices and promotions; (3) awarding the Manager of Tissue and Research position to a white employee (Joe Caivano) who did not have the requisite management experience and who did not have Plaintiff's education and experience; (4) denying Plaintiff the opportunity to dial in remotely for a conference call (after Plaintiff complained to his supervisor, Ms. Sawczak about discrimination as it relates to the unequitable delineation of duties) while allowing another white team member to dial in remotely to the same meeting; (5) not giving Plaintiff the opportunity to interview for the DRM position with the company while simultaneously offering the position to white employees who were less qualified and had less experience; (6) placing Plaintiff on a bogus, contrived "coaching plan"; and (7) ultimately forcing Plaintiff to resign.

61.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of damages.

62.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which he is entitled to an award of damages.

63.     By reason of the foregoing, Plaintiff demands judgment on the fifth cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

AND AS FOR AN SIXTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

64.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs of this Complaint as set forth herein.

65.     The conduct, actions and acts of the Defendant against Plaintiff, as described herein were intentional, extreme and outrageous and were motivated and directed at him because of his race.  The Defendant's intention is evident from the fact that it subjected Plaintiff to acts of discrimination, harassment and humiliation, and by Defendant (1) discriminating and retaliating relating to the unequitable distribution of work assignments; (2) discriminating with hiring practices and promotions; (3) awarding the Manager of Tissue and Research position to a white employee (Joe Caivano) who did not have the requisite management experience and who did not have Plaintiff's education and experience; (4) denying Plaintiff the opportunity to dial in remotely for a conference call (after Plaintiff complained to his supervisor, Ms. Sawczak about discrimination as it relates to the unequitable delineation of duties) while allowing another white team member to dial in remotely to the same meeting; (5) not giving Plaintiff the opportunity to interview for the DRM position with the company while simultaneously offering the position to

white employees who were less qualified and had less experience; (6) placing Plaintiff on a bogus, contrived "coaching plan"; and (7) ultimately forcing Plaintiff to resign.

66.     The aforementioned conduct of the Defendant and treatment of Plaintiff during his employment (by, *inter alia*, discriminating relating to the unequitable distribution of work assignments, discriminating with hiring practices and promotions, retaliating against Plaintiff by placing him on a contrived and bobus "coaching plan", and ultimately forcing him to resign) was extreme and outrageous.  This conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

67.     Defendant acted intentionally and/or recklessly and in deliberate disregard of a high probability that emotional distress would follow.  The conduct of the Defendant, individually and cumulatively, directly and immediately caused Plaintiff damage in the form of severe emotional distress, leaving him both physical injuries and psychological impairment.  Plaintiff's injuries included tightness in his chest, shaking, afraid for his well-being, and sleeplessness.  The damage caused by the Defendant's conduct is so severe that no reasonable person should be expected to endure it.

68.     As a direct and proximate result of the aforementioned conduct of the Defendant, Plaintiff has suffered damages.

69.     By reason of the foregoing, Plaintiff demands judgment on the sixth cause of action in an amount to be determined at trial, together with legal fees, applicable interest and costs.

WHEREFORE, Plaintiff demands:

a) A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States, and the State of New Jersey;

b) An injunction and order permanently restraining Defendant and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

c) An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Plaintiff for all monetary and/or economic harm, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation; for harm to his professional and personal reputation and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, stress and anxiety, embarrassment and humiliation; all other monetary and/or non-monetary losses suffered by Plaintiff;

d) For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

e) For punitive damages in an amount to be determined at trial;

f) An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

g) Such other and further relief as the Court deems just and proper.

Dated:  White Plains, New York
        February 16, 2021

                                Respectfully submitted,
                                THE LAW OFFICE OF
                                RICHARD ST. PAUL, ESQ., PLLC
                                Attorneys for Plaintiff Jerry Harris


                                By: /s  Christopher Pisacane
                                Christopher M. Pisacane, Esq. (CP-1854)
                                Of Counsel to the Law Office of Richard St. Paul
                                445 Hamilton Avenue, Suite 1102
                                White Plains, New York 10601
                                (914) 517-7568


## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action and claims to which he has a right to a

jury trial.


Dated:  February 16, 2021

                                By: /s  Christopher Pisacane
                                Christopher M. Pisacane, Esq. (CP-1854)
                                Of Counsel to the Law Office of Richard St. Paul
                                445 Hamilton Avenue, Suite 1102
                                White Plains, New York 10601
                                (914) 517-7568

                                *Attorneys for Plaintiff*